# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 10, 2024
Lyle W. Cayce
Clerk

No. 23-50537

Mark Miller; Scott Copeland; Laura Palmer; Tom Kleven; Andy Prior; America's Party of Texas, *also known as* APTX; Constitution Party of Texas, *also known as* CPTX; Green Party of Texas, *also known as* GPTX; Libertarian Party of Texas, *also known as* LPTX,

*Plaintiffs—Appellees/Cross-Appellants*,

*versus*

Jane Nelson, *in her official capacity as the Secretary of State of the State of Texas*; Jose A. Esparza, *in his official capacity as the Deputy Secretary of the State of Texas*,

*Defendants—Appellants/Cross-Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-700
_____

Before Wiener, Elrod, and Wilson, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Independent candidates and minor political parties in Texas filed a lawsuit alleging that numerous provisions of the Texas Election Code, when considered in combination with one another, violate their First and Fourteenth Amendment rights. Because they have not proven that the

No. 23-50537

challenged provisions violate their constitutional rights, we AFFIRM in part and REVERSE in part.

I

The Texas Election Code requires candidates to fulfill certain requirements to be listed on Texas ballots. Plaintiffs–Appellees allege that the challenged provisions violate the First and Fourteenth Amendments because, when applied in combination with one another, they impose severe and unequal burdens on "non-wealthy Independents and Minor Parties." Specifically, they argue that the following provisions of the Code "have prevented [them] from being able to fully participate in Texas's electoral process": Texas Election Code §§ 141.063–.065, 141.066(a), 141.066(c), 142.002, 142.006–.009, 142.010(b), 162.001, 162.003, 162.012, 162.014, 181.0311, 181.005(a), 181.005(c), 181.006(a), 181.006(b), 181.006(f)–(j), 191.007(b), 181.031–.033, 181.0041, 192.032(a)–(d), 192.032(f), and 202.007.

At the most fundamental level, the Code provides three ways for a candidate to obtain a place on the statewide general-election ballot: (1) winning a primary election; (2) receiving a nomination from a political party that nominates by convention and qualifies for ballot access; or (3) submitting a nominating petition signed by the required number of voters. *See* Tex. Elec. Code §§ 142.001–10, 172.001–173.087, 181.001–.068, 192.032.

Under section 172.001 of the Texas Election Code, political parties that received at least twenty percent of the vote in the last gubernatorial election, which are classified as "Major Parties," nominate their candidates for state and county government and Congress by primary election. *See* Tex. Elec. Code § 172.001. To run in a primary election, a candidate must either (1) submit an application to the state or county party chair in December of the year before the election and pay a filing fee or (2) submit a nomination petition. *Id.* §§ 172.116, .117(a), .120(a), .120(h), .122. The filing fees range

from $75 to $5,000. *Id.* § 172.024. If a candidate elects to submit a nomination petition, he or she must collect between 500 and 5,000 signatures depending on the office sought. *Id.* § 172.025. The Republican and Democratic parties are the only parties to have qualified as Major Parties under the Code since 1900.

The second way to obtain ballot access is for "Minor Parties," which are new political parties or parties that did not receive at least two percent of the total vote cast for governor at least once in the five previous general elections, to nominate candidates by convention. *See id.* §§ 172.002, 181.002, 181.003. Like Major Party candidates, candidates who seek a Minor Party's nomination must complete a notarized application in December of the year before the election. *Id.* §§ 141.031, 172.023(a), 181.031–33. To list a nominee on the general-election ballot, a Minor Party must file a convention-participant list within seventy-five days of the convention that shows participation equal to at least one percent of the total vote for governor in the preceding general election. *Id.* § 181.005(a). No Minor Party has qualified for the ballot in this manner in the last fifty years.

Thus, Minor Party candidates typically obtain ballot access through the third method provided for by the Code, which is filing nomination petitions. To qualify for the ballot using this method, a Minor Party must file a nomination petition containing enough valid signatures to make up for the shortfall in their convention-participation list within seventy-five days of the convention date. *See id.* § 181.006(a), (b). Notably, the Texas Election Code restricts petitions in numerous ways. First, a voter is not allowed to sign a nomination petition until after primary elections are held. *Id.* § 181.006(j). In addition, only voters who have not voted in a primary election and have not signed another Minor Party's nomination petition or participated in another party's convention are allowed to sign. *See id.* §§ 162.001, 162.003, 162.012, 162.014, 181.006(g), 181.006(j).

No. 23-50537

Further, to file a petition, a petition circulator must sign an affidavit confirming that they did each of the following: witnessed each signature, confirmed the date of signing, verified each signer's registration status, and confirmed each registration number entered on the petition. *Id.* §§ 141.064, 141.065. There is no electronic method for obtaining or submitting signatures. Moreover, when a Minor Party succeeds at obtaining ballot access through this method, it can only retain ballot access if one of its candidates for statewide office has received at least two percent of the vote in at least one of the five previous general elections. *Id.* § 181.005(c). Otherwise, the Minor Party must go through the petition process again during the next election cycle. *Id.*[1]

Independents can only qualify for the ballot by satisfying the nomination-petition requirements. And the requirements for doing so mirror the requirements imposed on Minor Party candidates who fail to obtain ballot access by convention. Indeed, Independents must file a declaration of intent in December of the year before the election, just like Minor Party candidates. *Id.* § 142.002. Likewise, Independents must file an application and a nomination petition that contains valid signatures equal in number to one percent of the total vote for governor in the preceding election. *Id.* §§ 142.004, 142.007. Independents seeking state office must also submit their nomination petitions by the thirtieth day after the runoff-primary election day, but they may not circulate them until after the primary election

---

[1] In 2019, Texas amended the statutory scheme to impose a new requirement on Minor Parties that is symmetrical with a requirement imposed on Major Parties. The added provision states that to appear on the general-election ballot, candidates must either pay a filing fee or submit a nomination petition that complies with section 141.062 and is signed by a specific number of eligible voters. Tex. Elec. Code § 181.0311 (previously codified as § 141.041).

or runoff-primary election. *Id.* §§ 142.004–.006, 142.009, 202.007.[2] Likewise, Independents must have petition circulators complete affidavits confirming the validity of signatures and only voters who have not voted in a primary election or signed another nomination petition may sign. *Id.* §§ 141.062–.066.

II

Plaintiffs–Appellees filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that the challenged provisions of the Texas Election Code are unconstitutional as applied to them when applied in combination with one another. They then filed a motion for a preliminary injunction, which the district court denied. In the same order, the district court also denied Defendants' motion to dismiss.

The parties filed cross-motions for summary judgment. The district court granted in part and denied in part each party's motion. Specifically, the district court held that all of Plaintiffs–Appellees' challenges failed except for one. The district court agreed with Plaintiffs–Appellees that the provisions of Texas Election Code Chapter 141 that mandate that any candidate who is required to submit a petition in support of their candidacy obtain and submit the requisite number of voter signatures in hardcopy are unconstitutional. It reasoned that the ballot-access petition requirements place an unequal burden on Plaintiffs–Appellees because "they cannot use electronic methods for petitioning whereas Texas allows Major Parties to use electronic methods as part of their procedures for accessing the ballot."

---

[2] In 2020, these restrictions made it so that Independents seeking state office had either thirty days or 114 days to collect signatures, depending on whether a runoff primary took place. **ROA.2309.**

Accordingly, the district court enjoined Defendants–Appellants from enforcing any provision of Chapters 141, 142, 162, 181, or 202 of the Texas Election Code insofar as any such provision imposes an unequal burden on Plaintiffs by imposing a paper-petitioning process. Defendants–Appellants appealed. Without objection from Plaintiffs–Appellees, the district court entered an order staying its injunction. Plaintiffs–Appellees then filed notice of their cross-appeal.

III

We review a district court's decision to grant a preliminary injunction for abuse of discretion. *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016). Under this standard, the district court's findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*. *Id.*; *see also O'Donnell v. Harris Cnty.*, 892 F.3d 147, 155 (5th Cir. 2018).

When evaluating the constitutionality of ballot-access laws, we apply the *Anderson-Burdick* framework. Under this standard, we determine whether a law that regulates ballot access is constitutional by weighing the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). "[R]easonable, nondiscriminatory restrictions" are subject to less exacting review, whereas laws that impose "severe" burdens are subject to strict scrutiny. *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788, and *Norman v. Reed*, 502 U.S. 279, 289 (1992)). Nevertheless, in every case,

the Supreme Court has emphasized that "[h]owever slight [the] burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman*, 502 U.S. at 288–89).

The district court carefully summarized the burdens that Plaintiffs–Appellees allege as each stemming from one of the following: (1) the number of signatures required to petition under the Texas Election Code; (2) the cost of obtaining signatures; (3) the time constraints on petitioning; (4) the restrictive petitioning procedures; and (5) section 141.041, which was enacted in 2019 and is now codified at section 181.0311. In this court, Plaintiffs–Appellees now also argue that the district court did not address their claim that the requirements imposed on Independents in presidential elections are unconstitutional. Because Plaintiffs–Appellees have failed to prove that the challenged provisions impose severe burdens on them, when considered individually or in combination with one another, and because the regulations are justified by legitimate state interests, we uphold the constitutionality of all challenged provisions as applied to Plaintiffs–Appellees.

A

As the district court proficiently explained, "[t]o qualify for the general election ballot in Texas, a statewide Minor Party or Independent candidate must submit valid signatures totaling 1% of all votes cast in the most recent gubernatorial election and 1% of all votes cast for president in Texas in the most recent presidential election." Plaintiffs–Appellees allege that this requirement imposes a severe burden that should be subjected to strict scrutiny. We disagree.

We have already held that a one-percent requirement does not impose a severe burden on potential candidates. *See Nader v. Connor*, 388 F.3d 137–

38 (5th Cir. 2004). Specifically, in *Nader*, the district court held, and this court affirmed, that requiring a presidential candidate to gather signatures equal to one percent of votes cast in the prior presidential election was not "unduly restrictive or unreasonable" because Texas has a legitimate interest in "'assur[ing] itself that the candidate is a serious contender truly independent, and with a satisfactory level of community support.'" *Nader v. Connor*, 332 F. Supp. 2d 982, 987 (W.D. Tex. 2004) (alteration in original) (quoting *Storer v. Brown*, 415 U.S. 724, 746 (1974)); *see also Nader*, 388 F.3d at 137–38. Although *Nader*'s holding is not alone outcome determinative in this case, because courts must give "due consideration . . . to the practical effect of election laws of a given state," *Nader*, 332 F. Supp. 2d at 988, the reasoning articulated in *Nader* applies. *See Clements v. Fashing*, 457 U.S. 957, 963 (1982) (stating that decisions in this area of constitutional law involve consideration of specific facts, circumstances, and the impact that a restriction has on voters).

As the district court correctly observed in its order, the Libertarian Party and Green Party of Texas have surmounted the requirement to secure ballot access consistently for several years. Thus, they have not shown that the burden is unduly restrictive as applied to them. In addition, the remaining plaintiffs have not shown that the numerical signature requirement unconstitutionally burdens their parties or voters. The Constitution Party of Texas and America's Party of Texas have about 130 members and ten members, respectively. Thus, neither Minor Party can credibly claim to have "a significant, measurable quantum of community support," which a state is within its constitutional bounds to require for ballot access. *Am. Party of Tex. v. White*, 415 U.S. 767, 782–83 (1974) (citing *Jenness v. Fortson*, 403 U.S. 431, 439 (1971)). Likewise, the individual plaintiffs have failed to prove that the numerical requirement "freezes the status quo." *Kirk*, 84 F.3d at 185 (quoting *White*, 415 U.S. at 787). Instead, the evidence suggests that the

requirement does no more than "implicitly recognize[] the potential fluidity of American political life." *Id.* at 185 (quoting *White*, 415 U.S. at 787). And the mere fact that a state's system "creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny." *Bullock v. Carter*, 405 U.S. 134, 143 (1972). Indeed, Texas's numerical signature requirement is justified by the state's legitimate state interest in "assur[ing] itself that the candidate is a serious contender, truly independent, and with a satisfactory level of community support," before listing that candidate on the ballot. *See Storer*, 415 U.S. at 746; Tex. Elec. Code §§ 142.007(1), 192.032(d). Accordingly, we uphold the requirement as constitutional as applied to Plaintiffs-Appellees.

B

Plaintiffs-Appellees also argue that the challenged provisions are unduly burdensome because, practically speaking, they make it so that Minor Party and Independents must hire professional petition circulators to collect an adequate number of signatures to obtain ballot access through the petitioning process. In support of this argument, Plaintiffs-Appellees cite the Supreme Court's decision in *Bullock*, which struck down a statutorily mandated filing fee. 405 U.S. at 149. While Plaintiffs-Appellees recognize that there is no statutory requirement to pay petition circulators in this case, they argue that the practical effect of the challenged provisions, which is that their candidates must hire petition circulators to complete a successful petition drive, constitutes "a distinction without a difference." But Plaintiffs-Appellees have failed to establish that the costs amount to a *consequential* burden in this case. As the district court explained in its order, "[t]he evidence in this case does not show that the State is impermissibly conditioning Plaintiffs' participation in the electoral process on their financial status." Once again, the evidence reflects that the Libertarian and

No. 23-50537

Green Parties of Texas have ballot access, and the remaining plaintiffs fail to establish that they have been impacted by the alleged burden, even if we were to hold that the burden is severe.

C

Plaintiffs-Appellees further argue that the provisions of the Texas Election Code that place time constraints on when Independents or Minor Parties can collect signatures for petitions are unconstitutionally burdensome. It is true that the Texas Election Code places more stringent time constraints on candidates seeking to access the ballot through the petitioning process than any other state. Nevertheless, Plaintiffs-Appellees' claim that this is severely burdensome as applied to them fails for the same reason that their claims concerning the number of signatures required and the costs of obtaining signatures fail. As the district court adeptly held, Plaintiffs-Appellees have failed "to present adequate evidence that the time constraints burden them. Instead, [they] simply argue that the time period remains fixed while the number of required signatures increases with each election cycle." Such evidence is not sufficient to establish a severe burden on Plaintiffs-Appellees.

D

Next, Plaintiffs-Appellees challenge the requirements imposed on petition signers and circulators. Specifically, Plaintiffs-Appellees allege that the "primary screenout" provisions, which restrict potential voters from signing petitions before the primaries and then prohibit voters who have voted in the primaries from signing petitions, impose an unconstitutional burden. However, Plaintiffs-Appellees have once again failed to tie the restrictions to evidence of the severe burdens placed specifically on them. *See Kirk*, 84 F.3d at 186 & n.5. Not only so, the screenout restrictions are "nothing more than a prohibition against any elector's casting more than one

vote in the process of nominating candidates for a particular office." *White*, 415 U.S. at 785. Texas "may determine that it is essential to the integrity of the nominating process to confine voters to supporting one party and its candidates in the course of the same nominating process" such that "each qualified elector may . . . exercise the political franchise . . . either by vote or by signing a nominating petition." *Id.* at 785–86 (quoting *Jackson v. Ogilvie*, 325 F. Supp. 864, 867 (N.D. Ill.), *aff'd*, 403 U.S. 925 (1971)). But once that determination has been made, the electorate "cannot have it both ways," even despite Plaintiffs–Appellees' best arguments. *Id.* at 785 (quoting *Jackson*, 325 F. Supp. at 867).

E

Plaintiffs–Appellees also argue that section 181.0311, which states that candidates seeking nomination at a convention must pay a filing fee or submit a petition in lieu thereof, runs afoul of the Equal Protection Clause because it is facially discriminatory against "non-wealthy candidates and their supporters" and does not implicate any legitimate state interest. *See* Tex. Elec. Code § 181.0311. Specifically, Plaintiffs–Appellees argue that the provision is unconstitutional because "[i]t requires that Minor Party candidates pay filing fees identical to those paid by Major Party candidates, but while the Major Parties retain the fees their candidates pay, the State retains the fees that Minor Party candidates pay."

But Plaintiffs–Appellees' argument is not supported by precedent. In Texas, all party candidates that seek ballot access through a primary or nominating convention, regardless of party affiliation, must demonstrate that they are serious candidates with some public support by submitting either a filing fee or a nominating petition. *See id.* § 181.0311. Section 181.0311 serves that state interest, and its implementation is consistent with the well-established rule that a state is not obliged to assure "every voter . . . that a

candidate to his liking will be on the ballot." *Lubin v. Panish*, 415 U.S. 709, 716 (1974).

Plaintiffs–Appellees' argument that the Supreme Court's holding in *Bullock* demands otherwise is inapposite. In *Bullock*, the Court held that "providing no reasonable alternative means of access to the ballot" other than paying a filing fee violates the Equal Protection Clause. 405 U.S. at 149. It did so because it reasoned that, in a state with such a ballot-access scheme, candidates seeking election could be "precluded from seeking the nomination of their chosen party, no matter how qualified they might be, and no matter how broad or enthusiastic their popular support." *Id.* at 143. But the system that Texas has created under section 181.0311 does not have such an inherently preclusive effect. By giving candidates an option between collecting signatures or paying a filing fee, Texas law does not measure whether a candidacy is serious or spurious "solely in dollars." *Lubin*, 415 U.S. at 716.

F

Finally, Plaintiffs–Appellees argue that "the Supreme Court and this Court have made clear that states may not impose more severe ballot access requirements on candidates for president than they do on candidates for other statewide offices" and that Texas's Election Code does just that. Specifically, Plaintiffs–Appellees allege that the challenged provisions impose more severe restrictions on presidential Independents than on statewide Independents in two ways. First, while statewide Independents must obtain petition signatures equal to one percent of the last vote for governor, presidential Independents must obtain signatures equal to one percent of the last vote for president. *See* Tex. Elec. Code § 192.032(d). Second, presidential Independents may not circulate their petitions until after the presidential primary but must submit them by the second Monday

in May, which results in presidential Independents having less time to circulate petitions than statewide Independents.

But Plaintiffs–Appellees misapply *Kirk* and *Anderson*. In *Kirk*, we held that Texas's deadlines for filing declarations of intent did not unduly burden minor parties but that requiring nomination petitions to contain each signer's voter-registration number did. 84 F.3d at 187. In doing so, we noted in dicta that when considering challenges to state-imposed restrictions on national elections, courts must consider that states have a "less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." *Id.* at 183 (quoting *Anderson*, 460 U.S. at 795). Contrary to Plaintiffs–Appellees' claim, this statement from *Kirk* does not stand for the proposition that it would be unconstitutional for a state law to have the effect of practically requiring more from potential presidential candidates than from candidates running for statewide election. Rather, *Kirk* merely says that when evaluating the constitutionality of ballot-access laws, courts should factor in that a state has less important interests in regulating nationwide elections than statewide elections. Indeed, our law does not suggest that it is unconstitutional for a state law to have the effect of practically requiring more from potential presidential candidates than candidates running for statewide election. Thus, we affirm the district court's holding that section 181.0311 is not unconstitutionally burdensome as applied to Plaintiffs–Appellees.

G

We turn finally to Plaintiffs–Appellees' argument that the lack of electronic petitioning methods available to Minor Party and Independents render Texas's requirement that petitions be completed on paper unconstitutional. Specifically, Plaintiffs–Appellees argue that the requirement that petitions be

No. 23-50537

completed on paper violates Plaintiffs–Appellees' right to equal protection because Major Parties are allowed to use electronic methods to obtain ballot access.  We disagree.

While Major Parties are allowed to use electronic methods during the Primary Election process, all candidates who participate in the petitioning process are required to obtain their petition signatures through wet-ink/hard-copy signatures.  And as confirmed at oral argument, all candidates, regardless of party affiliation, have the opportunity to file applications for ballot access and the accompanying petitions electronically under Chapter 141.  Tex. Elec. Code §§ 141.040(c); 141.062–141.065.[3]  In other words, the paper-petitioning requirements are the same for all candidates who elect to obtain ballot access through the petitioning method.

Under the mistaken impression that only Major Parties could file applications and petitions electronically, the district court found for the Plaintiffs–Appellees on this equal protection claim.  But because this is not the case, we reverse the district court's holding that the electronic petitioning requirement is unconstitutional.

IV

Because the challenged provisions of the Texas Election Code do not violate the Constitution as applied to Plaintiffs–Appellees, we AFFIRM in part and REVERSE in part and RENDER.

---

[3] To the extent that Plaintiffs–Appellees argue that the paper-petitioning requirement has a more burdensome effect on them than on Major Party candidates, we reject that claim for the same reasons that we have rejected Plaintiffs–Appellees' other claims.  Plaintiffs–Appellees have failed to tie the paper-petitioning requirement to evidence of the severe burdens placed specifically on them.